Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/28/2019 09:07 AM CDT

Rita Sundermann, appellant, v. Hy-Vee, Inc.,
and Sweetbriar II, LLC, appellees.

___ N.W.2d ___

Filed May 28, 2019.    No. A-18-250.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

4. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

5. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

6. ____. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

7. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most

favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

8. **Negligence: Proof.** To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. To warrant summary judgment in its favor in a negligence action, a party must submit evidence showing the absence of at least one of these elements.

9. **Negligence.** Whether a duty exists is a policy decision, and a lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination.

10. \_\_\_\_. In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence.

11. **Negligence: Judgments.** The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter. And if the court takes the question of negligence away from the trier of fact because reasonable minds could not differ about whether an actor exercised reasonable care (for example, because the injury was not reasonably foreseeable), then the court's decision merely reflects the one-sidedness of the facts bearing on negligence and should not be misrepresented or misunderstood as involving exemption from the ordinary duty of reasonable care.

12. **Negligence: Judgments: Summary Judgment.** Although foreseeability is a question of fact, there remain cases where foreseeability can be determined as a matter of law, such as by summary judgment.

Appeal from the District Court for Douglas County: Horacio J. Wheelock, Judge. Reversed and remanded for further proceedings.

Matthew A. Lathrop, of Law Offices of Matthew A. Lathrop, P.C., L.L.O., and Kathy Pate Knickrehm for appellant.

Michael T. Gibbons and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellees.

Pirtle, Riedmann, and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Rita Sundermann appeals from an order of the district court for Douglas County granting the motion for summary judgment made by Hy-Vee, Inc., and Sweetbriar II, LLC (collectively Hy-Vee). Sundermann argues on appeal that the district court erred in finding, as a matter of law, that Hy-Vee could not have breached its duty of care to her because the motor vehicle accident that injured her on Hy-Vee's property was not reasonably foreseeable. For the following reasons, we reverse the grant of summary judgment of the district court and remand the matter for further proceedings.

## BACKGROUND

Sundermann filed a complaint against Hy-Vee on December 21, 2015, alleging that she was injured as a result of Hy-Vee's negligence during a motor vehicle accident on its property on March 2, 2012. On January 12, 2016, Sundermann filed an amended complaint. Hy-Vee filed an answer to the amended complaint, which included affirmative defenses, on January 29. Also on January 29, Hy-Vee filed a third-party complaint against Robert Swanson, alleging that he was the driver who negligently struck Sundermann with his vehicle. On March 16, the third-party complaint against Swanson was dismissed with prejudice. Hy-Vee filed a motion for summary judgment against Sundermann on December 4, 2017.

A hearing on the motion for summary judgment was held on February 16, 2018. No testimony was offered, but 17 total exhibits were offered and admitted, in particular a deposition given by Sundermann and a deposition given by Swanson.

Hy-Vee, Inc., owns a grocery store on North 156th Street in Omaha, Nebraska. On the corner of 156th Street and West Maple Road, Hy-Vee, Inc., owns and operates a filling station and convenience store, which sits on land owned by Sweetbriar II. Immediately to the north of the convenience store on a grassy area was an air compressor and hose for filling tires.

To the north of the air compressor was a 24-foot-wide paved access drive that vehicles used to enter and exit the property. Swanson described the northern access drive as being busier and used by more vehicles than a second access drive located to the south of the convenience store. On the north side of the northern access drive was a row of six parking spots, which were described as "'right angle'" or "'90-degree'" parking spots, meaning they were situated perpendicular to the access drive. There was no designated parking space for patrons using the air compressor, but drivers could park along the south curb of the northern access drive in order to fill their tires.

On March 2, 2012, Sundermann stopped at Hy-Vee and filled her car with gasoline. She said that it was a windy, chilly day that was nearing dusk. As she had done on prior occasions, she used the air compressor to refill her tires. Because the parking spots in front of the air compressor—to the convenience store's east—were occupied, she parked alongside the south curb of the northern access drive. Her car was facing west. She said that she had parked in the same place in the past when using the air compressor.

Sundermann noticed a number of vehicles, including a pickup truck that belonged to Swanson, parked in the right-angle parking spots to the north of the access drive. She stated that she looked at the pickup truck before filling her tires, but could not tell whether anyone was inside it, and that she noticed no illuminated brake lights, exhaust, or other indications that the pickup truck was running. She never saw anyone walk out of the store and get into the pickup truck.

Sundermann first filled her two driver's-side tires before looping the hose over the hood of her car to fill the passenger's-side tires. As she was facing her car and crouched down filling the front passenger-side tire, she heard Swanson's pickup truck's ignition start. Sundermann stood up but did not have time to turn around or get out of the way before she felt the impact of the pickup truck hitting her. She said that she

was hit from the hips down to her knees and collapsed to the ground once Swanson pulled forward, because her legs would not support her. As a result of her injuries, a metal rod was implanted in Sundermann's left leg.

Swanson worked as a cashier at the Hy-Vee convenience store from 2009 through 2013 or 2014 and usually worked from 10 a.m. to 6 p.m. Swanson stated that employees were supposed to park in the right-angle parking spots to the north of the store and that he had parked his pickup truck in one of those spots on March 2, 2012. Swanson also stated that he had observed people park their vehicles alongside the south curb of the northern access drive in order to use the air compressor. He said that more people parked in the access drive than in the parking spots to the east of the store when they used the air compressor.

Noting that there was no signage advising where to park to use the air compressor, Swanson stated that he thought it created an unsafe situation. He believed that the air compressor should not be located where it was because the northern access drive was "very, very busy." Swanson said that on past occasions, he had been parked in a right-angle parking spot to the north of the store and had to wait to leave until a car finished using the air compressor if it was parked alongside the south curb of the access drive. In order to get out of the right-angle parking spots when someone was parked alongside the south curb using the air compressor, Swanson stated, a driver would have to "cut [his or her] tires real hard to the back." Swanson acknowledged that he had never heard of any accidents involving someone using the air compressor, however.

On March 2, 2012, Swanson exited the convenience store shortly after 6 p.m. and got in his pickup truck, which was parked in a right-angle parking spot to the north of the store. He said that Sundermann's car was not parked in the northern access drive when he exited the store. Swanson said that it was dark enough that he turned on his headlights. He also said that he called his wife while he was sitting in his pickup

truck, which was running, but that he hung up before putting his pickup truck in reverse.

Swanson stated that he waited for three to four cars to pass behind him before beginning to back up. Then, when he saw Sundermann's car behind him, he hit the wrong pedal, pressing on the accelerator instead of the brake pedal. Swanson said that he never saw Sundermann herself until he realized he had hit a car and a person. After the collision with Sundermann, Swanson pulled back into his parking spot and waited for the authorities to arrive. Swanson said that he was not ticketed, although he has never denied responsibility for the accident and has accepted fault. Swanson also acknowledged that his insurance company had settled Sundermann's claim against him.

At the hearing on Hy-Vee's motion for summary judgment, the court also received as exhibits depositions from the parties' expert witnesses. Sundermann retained Daniel Robison, whose report and deposition were admitted as evidence. Hy-Vee retained Jason Stigge, whose report and deposition were likewise admitted. Hy-Vee's director of site planning, Jeff Stein, was also deposed, and his deposition was admitted, as were exhibits containing photographs of the site and an affidavit signed by Sundermann's counsel.

Robison, who has 40 years' experience complying with codes in designing facilities that include convenience stores and gas stations, opined that it was unsafe for Hy-Vee to place the air compressor in a location that would cause patrons to park in the drive aisle when using it. Robison said he believed that if Hy-Vee had properly designed and constructed the property, the accident would not have occurred. Robison also stated that he had not encountered many cases in which a convenience store placed devices like an air compressor in a location that encouraged patrons to block drive aisles, but he acknowledged that other stores in Omaha positioned their air compressors similarly to the one at issue in this matter. He opined it was foreseeable both that a patron would park

as Sundermann did and that drivers would make errors while backing out of a parking spot as Swanson did.

In his written report, Robison said that Hy-Vee ought to have adhered to safety guidelines that designated a separate area for exterior amenities such as an air compressor. Robison noted that the original site design did not include installing a tire filling station on the north side of the convenience store. He opined that Hy-Vee's failure to construct a dedicated parking area that was separated from the drive aisle was a cause of Sundermann's injuries. Such a failure also violated codes and standards for maintaining safe premises according to Robison.

In contrast, Stigge, a mechanical engineer and consultant, opined that the Hy-Vee convenience store was designed in compliance with relevant codes and safety standards and found that the parking lot was not dangerous. Stigge stated that a convenience store does not necessarily have a predetermined flow of traffic, so an air compressor could never really be placed outside possible traffic flow. Stigge also opined that the physical separation of pedestrian and automobile traffic was not feasible based on a convenience store's purpose.

In his written report, Stigge noted that there were not specific requirements related to the location of an air filling station included in codes adopted by the city of Omaha. He also reviewed the police report and photographs and pointed out in his report that Swanson's tires left acceleration marks on the ground, leaving the impression that Swanson had pressed the accelerator fully to the floor before colliding with Sundermann. Based on his inspection of the accident scene and automotive accident reconstruction techniques, Stigge wrote that Swanson struck Sundermann with enough force to rotate the front of her car around the curb and place a gouge on the concrete curb. He opined that Hy-Vee's layout and location of its air compressor had not created an unsafe condition, however. Stigge noted that Hy-Vee's placement of the air compressor was common among convenience stores in the

area and that convenience stores naturally create a mixture of pedestrian and vehicular traffic. Additionally, Stigge opined that it was not reasonably foreseeable that a driver such as Swanson would lose control of his vehicle and strike a person like Sundermann, who was positioned beside another vehicle immediately behind the first vehicle.

Stein, Hy-Vee's director of site planning, acknowledged in his deposition that not all Hy-Vee convenience stores include a designated area for using such an air compressor. He stated that convenience store parking lots necessarily include a mixture of both pedestrian and automobile traffic using the same space, including in drive aisles. Stein said that he did not think it was unreasonable for Sundermann to park where she did in order to use the air compressor. He also stated that it appeared there was plenty of room for other drivers to have navigated around Sundermann when she parked where she did.

Having reviewed the parties' briefs and exhibits, the district court entered an order on February 23, 2018, granting Hy-Vee's motion for summary judgment. The district court found that Hy-Vee owed a legal duty to all patrons of its convenience store premises, including Sundermann. However, the district court further found that Hy-Vee did not, as a matter of law, breach the duty of care it owed to Sundermann.

The district court held that a breach of duty occurs only when the resulting injury to a plaintiff is a reasonably foreseeable consequence of the defendant's conduct. The court held that the accident in this instance was not reasonably foreseeable as a matter of law. The court specifically examined whether it was reasonably foreseeable that a "person filling [a] vehicle's tires with air at a gas station will be hit by the driver of another vehicle whose foot slipped off the break [sic] onto the accelerator and caused injury to a plaintiff." The court found that no reasonable jury could find that Hy-Vee breached its duty of care to Sundermann, because the accident that injured her was not reasonably foreseeable.

In finding that Hy-Vee did not, as a matter of law, breach the duty of care it owed to Sundermann, the district court therefore also found that Hy-Vee was not negligent as a matter of law. Thus, the district court granted Hy-Vee's motion for summary judgment.

Sundermann now appeals.

## ASSIGNMENTS OF ERROR

On appeal, Sundermann assigns that the district court erred in granting Hy-Vee's motion for summary judgment based on the findings, as a matter of law, that Hy-Vee did not breach its duty of care and that it did not cause Sundermann's injuries.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018). In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Sundermann argues that summary judgment should not have been granted in this matter because she presented evidence of genuine issues of material fact related to Hy-Vee's breach of its duty of care and Hy-Vee's causation of her injuries. Hy-Vee argues in response that because the accident was not a reasonably foreseeable consequence of Hy-Vee's actions, Hy-Vee could not, as a matter of law, breach the duty it owed to Sundermann. Hy-Vee also argues that its site design was not the proximate cause of Sundermann's injuries. Viewing

the evidence in the light most favorable to Sundermann, we disagree with the district court's finding that Hy-Vee did not, as a matter of law, breach its duty of care. We find that Sundermann presented sufficient evidence of Hy-Vee's negligence as to engender a question of material fact that must be determined by the finder of fact in this matter. We therefore reverse the judgment of the district court and remand the matter for further proceedings.

[3,4] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017). Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

[5-7] On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016). Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id*. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[8] To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018). To warrant summary judgment in its favor in a negligence action, a party must submit evidence showing the absence of at least

one of these elements. See *Thomas v. Board of Trustees, supra*. Because the district court granted summary judgment based on an absence of evidence supporting Hy-Vee's breach of its duty to Sundermann, we turn our attention to that element of negligence.

[9,10] In adopting the duty analysis contained in 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), the Nebraska Supreme Court held that whether a duty exists is a policy decision and that a lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but that such a ruling is not a no-duty determination. See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010). In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence. *Id*.

[11,12] The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. *Id*. "[D]eciding what is reasonably foreseeable involves common sense, common experience, and application of the standards and behavioral norms of the community—matters that have long been understood to be uniquely the province of the finder of fact." *Id*. at 212, 784 N.W.2d at 914. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter. *Id*. And if the court takes the question of negligence away from the trier of fact because reasonable minds could not differ about whether an actor exercised reasonable care (for example, because the injury was not reasonably foreseeable), then the court's decision merely reflects the one-sidedness of the facts bearing on negligence and should not be misrepresented or misunderstood as involving exemption from the ordinary duty of reasonable care. *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra*. Therefore, although foreseeability is a question of fact, there remain cases where

foreseeability can be determined as a matter of law, such as by summary judgment. *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017).

Turning to the present case, we are mindful that in evaluating an appeal from a summary judgment, we evaluate only whether the parties' pleadings and admitted evidence show a genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts. See *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018). We are also mindful that we give the benefit of all reasonable inferences deducible from the evidence and review the evidence in the light most favorable to Sundermann because she is the party against whom summary judgment was granted. See *id*.

Evidence was presented to the district court showing that Sundermann parked alongside the south curb of Hy-Vee's northern access drive in order to use the store's air compressor to fill her car's tires. As employees were instructed to do, Swanson was parked in the right-angle parking spots when Sundermann was parked in the northern access drive. Swanson described needing to sharply turn his vehicle when backing out of those parking spots if someone was parked alongside the curb using the air compressor. Swanson stated in his deposition that during the 4 to 5 years he worked as a store cashier, he had observed more people use the air compressor while parked in the access drive than parked in the parking spots on the east side of the convenience store. Swanson opined that he believed the location of the air compressor created an unsafe situation for people parked in the access drive.

Robison, the expert witness retained by Sundermann, opined that it was foreseeable that patrons would park where Sundermann had parked in the northern access drive if they intended to use the air compressor. He noted that Hy-Vee's placement of the air compressor encouraged patrons to block drive aisles in order to fill their tires. Robison also opined that it was foreseeable that a driver may make errors while backing out of a parking spot. Hy-Vee's director of site planning,

Stein, stated that it was not unreasonable for Sundermann to have parked alongside the northern access drive's curb when using the air compressor. He also acknowledged that convenience stores necessarily include a mixture of both pedestrian and automobile traffic within the same spaces.

Considering this evidence in a light most favorable to Sundermann, it is clear that a finder of fact could find it reasonably foreseeable that a patron would park in the northern access drive while using Hy-Vee's air compressor. There is some evidence that more patrons who used the air compressor actually parked in the northern access drive than elsewhere. It is also clear that a finder of fact could find it foreseeable that automobiles would be parked in the right-angle parking spots to the north of the access drive, including automobiles belonging to store employees.

Moreover, finders of fact may—when using their common sense and common experience and applying the standards and behavioral norms of the community—infer from the evidence that automobiles could simultaneously be parked in the northern access drive and in the right-angle parking spots farther to the north. Finders of fact may also reasonably infer from the evidence that an automobile would back out from one of the right-angle parking spots and collide with an automobile parked in the northern access drive, perhaps owing, in part, to the need for drivers to sharply turn their vehicles when backing out of those parking spots. We note the district court focused on the very narrow fact pattern present in this case, that being the foreseeability that a person's foot would slip off the brake pedal and inadvertently hit the gas pedal, resulting in the collision. We find that such a fact-specific analysis is not necessary in assessing the question at hand and find that a reasonable person could conclude that it was foreseeable to Hy-Vee that a vehicle could be operated in such a manner as to fail to observe a person such as Sundermann utilizing the air compressor in the access drive area, resulting in a collision and injury.

Reasonable minds may differ in their assessment of foreseeable risk at the time of Hy-Vee's alleged negligence—which is to say that material questions of fact surround whether Hy-Vee exercised appropriate care or breached its duty of care to Sundermann. We find that Sundermann proffered sufficient evidence to engender questions of material fact that must be resolved by a trier of fact. Thus, summary judgment was inappropriate in this matter. We therefore reverse the judgment of the district court and remand the matter for further proceedings.

As a final matter, we note that Sundermann also assigned that the district court erred in its findings related to the causation element of her negligence action. Both Sundermann and Hy-Vee also briefed this issue. However, the district court's order makes only passing reference to causation and did not fully evaluate the issue. Nonetheless, we have reviewed the parties' arguments and, for substantially the same reasons discussed herein, hold that material questions of fact do exist related to causation as well, which warrant a finder of fact's review upon further proceedings.

## CONCLUSION

Based on the foregoing, we reverse the district court's order granting Hy-Vee's motion for summary judgment and remand the matter for a trial on the merits.

Reversed and remanded for further proceedings.