Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/09/2020 02:10 AM CST

Rita Sundermann, appellant, v. Hy-Vee, Inc.,
and Sweetbriar II, LLC, appellees.

___ N.W.2d ___

Filed August 14, 2020.    No. S-18-250.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a
   lower court's grant of summary judgment if the pleadings and admitted
   evidence show that there is no genuine issue as to any material facts or
   as to the ultimate inferences that may be drawn from the facts and that
   the moving party is entitled to judgment as a matter of law. In reviewing
   a summary judgment, an appellate court views the evidence in the light
   most favorable to the party against whom the judgment was granted, and
   gives that party the benefit of all reasonable inferences deducible from
   the evidence.
2. **Negligence.** The question whether a legal duty exists for actionable
   negligence is a question of law dependent on the facts in a particu-
   lar situation.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an
   appellate court has an obligation to resolve the questions independently
   of the conclusion reached by the trial court.
4. **Negligence: Damages: Proximate Cause.** In order to prevail in a neg-
   ligence action, a plaintiff must establish the defendant's duty to protect
   the plaintiff from injury, a failure to discharge that duty, and damages
   proximately caused by the failure to discharge that duty. As such, the
   threshold issue in any negligence action is whether the defendant owes
   a legal duty to the plaintiff.
5. **Negligence.** Not every negligence action involving an injury suffered on
   someone's land is properly considered a premises liability case.
6. **Negligence: Liability: Proximate Cause.** A possessor of land is subject
   to liability for injury caused to a lawful visitor by a condition on the
   land if (1) the possessor either created the condition, knew of the condi-
   tion, or by the existence of reasonable care would have discovered the
   condition; (2) the possessor should have realized the condition involved

an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

7. **Negligence: Liability: Proof.** The first element of the premises liability test may be met by proving any one of its three subparts, namely, that the defendant created the condition, knew of the condition, or would have discovered the condition by the exercise of reasonable care.

8. **Negligence: Words and Phrases.** An unreasonable risk of harm means a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.

9. **Negligence: Liability.** A land possessor is not liable to a lawful entrant on the land unless the possessor has or should have had superior knowledge of the dangerous condition.

10. ____: ____. Even where a dangerous condition exists, a premises owner will not be liable unless the premises owner should have expected that a lawful visitor such as the plaintiff either would not discover or realize the danger or would fail to protect himself or herself against the danger.

11. **Negligence.** Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition.

12. ____. Under the open and obvious doctrine, a possessor of land is not liable to invitees for physical harm caused by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness.

13. ____. A condition on the land is considered open and obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee exercising ordinary perception, intelligence, and judgment.

14. ____. A determination that a risk or danger is open and obvious does not end the duty analysis in a premises liability case. A court must also determine whether the possessor should have anticipated that lawful entrants would fail to protect themselves despite the open and obvious risk.

15. **Judgments: Appeal and Error.** Where the record demonstrates that the decision of the trial court is ultimately correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm.

Petition for further review from the Court of Appeals, PIRTLE, RIEDMANN, and ARTERBURN, Judges, on appeal thereto from the District Court for Douglas County, HORACIO J. WHEELOCK, Judge. Judgment of Court of Appeals reversed and remanded with directions.

Matthew A. Lathrop, of Law Offices of Matthew A. Lathrop, P.C., L.L.O., and Kathy Pate Knickrehm for appellant.

Raymond E. Walden and Michael T. Gibbons, of Woodke & Gibbons, P.C., L.L.O., for appellees.

Jason Ausman, of Ausman Law Firm, P.C., L.L.O., and Benjamin I. Siminou, of Siminou Appeals, Inc., for amicus curiae Nebraska Association of Trial Attorneys.

Brian J. Fahey and Robert W. Futhey, of Fraser Stryker, and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for amicus curiae The Nebraska Defense Counsel Association.

MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.
This is a personal injury action arising from an accident between a pickup truck and a pedestrian in a convenience store parking lot. The pedestrian sued the convenience store, alleging the accident was caused by a dangerous condition on the land. The district court granted summary judgment in favor of the convenience store, finding the driver's negligence was not reasonably foreseeable. The Nebraska Court of Appeals reversed, and remanded for further proceedings.[1] We granted further review, and although our reasoning differs from that relied upon by the district court, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the judgment of the district court.

---

[1] *Sundermann v. Hy-Vee*, 27 Neb. App. 287, 929 N.W.2d 919 (2019).

## I. BACKGROUND

On March 2, 2012, as it was becoming dusk, Rita Sundermann was struck by a pickup truck while she was inflating her car's tires at a Hy-Vee, Inc., gas station and convenience store in Omaha, Nebraska. Because the layout of the property is central to the issues on appeal, we include an aerial photograph received as an exhibit, and we describe the property in some detail.

### 1. Property

The relevant design features of the property are not disputed. The front of the convenience store faces east, and there are marked parking stalls along the entire store front. There are two access drives into and out of the property, but the one at issue in this case is located just north of the convenience store. That access drive is 24 feet wide and has two lanes which the parties' experts referred to as "drive aisles." One drive aisle accommodates eastbound traffic entering the convenience store, and the other accommodates westbound traffic leaving the property. Perpendicular to the westbound drive aisle are six marked parking stalls. Convenience store employees are asked to park in the stalls along the drive aisle rather than the stalls in front of the store.



Figure 1. Hy-Vee Gas Station #10 looking east. Red arrow indicates location of air pump at time of incident. Via Google Earth.

At the time of the accident, a tire inflation station was located along the sidewalk on the northeast corner of the convenience store. It consisted of a free standing air compressor cabinet on a pole with a coiling air hose that, when fully extended, reached to the northernmost parking stalls in front of the store and to portions of the eastbound drive aisle. There were no signs or curb markings directing patrons where to park, or not to park, when using the air compressor. The front of the air compressor faced east and had a large "START" button and a decal reading "FREE AIR."

Prior to the accident, Hy-Vee was aware that patrons parked both in front of the store and in the eastbound drive aisle to use the air compressor. But there was no evidence of prior accidents involving vehicles and patrons using the air compressor, nor was there evidence that Hy-Vee had received safety complaints involving the location of the air compressor.

## 2. Accident

After fueling her car at one of the Hy-Vee fuel pumps, Sundermann parked her car along the curb facing westbound in the eastbound drive aisle, near the air compressor, to inflate her tires. She stood curbside and used the air compressor to fill both tires on the driver's side of the car. Then, she draped the air hose over the hood and walked around the car to inflate the tires on the passenger side. As she was walking, she looked around for approaching traffic and backing vehicles. Seeing none, she crouched down in the drive aisle to inflate the car's front right tire. While doing so, she was facing her car, but still watching the traffic around her. Sundermann was not sure how long she was crouched inflating the tire, but she recalled one car pulling into the lot and driving slowly around her. As she remained crouched, she heard a loud engine start behind her and she stood up. Sundermann did not recall if she stood up as soon as she heard the engine, but she was not able to turn around or get out of the way before she was struck by a pickup truck being operated by Robert Swanson. Sundermann was seriously injured in the collision

and required significant medical treatment, including placement of a metal rod in her left leg.

Sundermann had used the Hy-Vee air compressor on prior occasions, and when doing so, she had parked her car in a similar manner in the eastbound drive aisle. She also had seen other cars park in the drive aisle to use the air compressor. Sundermann was aware of the dangers posed by parking in the drive aisle, and on the day of the accident, she knew she "was in a dangerous position." She was "very aware" of the vehicles around her, and while she filled her tires, she was looking and listening for vehicles.

Sundermann testified she knew there were marked parking stalls along the front of the store where she could have parked to use the air compressor, but she explained that on the evening of the accident, those stalls were occupied. She also testified that in her opinion, parking in the marked stalls was no safer than parking in the drive aisle, because crouching in the stalls still presented the danger of getting hit by a car pulling into or out of an adjacent stall. Sundermann testified that even after the accident, she parked her car in the drive aisle to use the Hy-Vee air compressor, but she positioned her car so she could remain curbside while inflating her tires.

Swanson, the driver of the pickup truck that struck Sundermann, had worked at the convenience store since 2009. He had seen patrons using the air compressor both while parked in the drive aisle and while parked in the first stall along the front of the convenience store. But before the accident with Sundermann, Swanson had not heard of anyone being injured while using the air compressor in the drive aisle.

Swanson testified the Hy-Vee access drive was "very, very busy." On prior occasions, while he was backing from the parking stalls along the access drive, he had encountered a car parked in the eastbound drive aisle using the air compressor. In those instances, he felt he had sufficient room to back out so long as he "cut [the] tires real hard," but his usual practice was to stop and wait for the car to leave before he finished backing.

On the day of the accident, Swanson left work around 6 p.m. and walked to his pickup truck, which was parked in one of the marked stalls adjacent to the westbound drive aisle. As he walked past the air compressor, he did not see a car parked in the eastbound drive aisle. After Swanson got into his pickup truck and started the motor, he remained parked with the engine running while several vehicles passed behind him in the drive aisle. He then put the pickup truck in reverse and started backing out of the stall. After moving about a foot, he noticed Sundermann's car parked behind him in the eastbound drive aisle. He "went to hit the brake," intending to stop and wait for the car to move out of the way, but his foot slipped onto the gas pedal instead, causing his pickup truck to accelerate backward and strike Sundermann. Swanson's rear tires left acceleration marks on the pavement. Swanson testified that but for his pedal error, he would have had plenty of room to stop and would not have hit Sundermann.

After the accident, Swanson admitted his negligence. He reached a settlement agreement with Sundermann and is no longer a party to this action.

### 3. Sundermann's Complaint
### Against Hy-Vee

Sundermann sued Hy-Vee and Sweetbriar II, LLC (Sweetbriar), for negligence. Her amended complaint alleged that Hy-Vee owned and operated the gas station and convenience store and that Sweetbriar owned the real property on which it was situated. Sundermann alleged, summarized, that the location of the air compressor was a dangerous condition on the land because it was placed in an area of high vehicular and pedestrian conflict, there were no barriers or signs to prevent patrons from stopping in the access drive to use the air compressor, and there were no posted warnings.

Hy-Vee and Sweetbriar filed an answer in which they denied negligence, alleged Sundermann was contributorily negligent, and alleged the accident was proximately caused by the actions of others over whom Hy-Vee had no control.

### 4. Motion for Summary Judgment and Expert Testimony

Hy-Vee and Sweetbriar moved for summary judgment on Sundermann's amended complaint. At the hearing, 17 exhibits were received, including the depositions of Sundermann and Swanson, a deposition of Hy-Vee's director of site planning, and reports and depositions from expert witnesses retained by Sundermann and Hy-Vee and Sweetbriar. The deposition testimony of Sundermann and Swanson was consistent with the facts recited above. As pertinent to the issues on appeal, we summarize the opinions of the parties' experts.

### (a) Sundermann's Expert

Sundermann's expert, Daniel Robison, was a licensed architect. Over the course of his 40-year career, he had designed approximately 15 gas station and convenience stores, generally in Illinois and Wisconsin. He admitted there was nothing in any Omaha or Nebraska code that specifically related to the placement of tire inflation stations at convenience stores. He also admitted that no national codes specifically addressed the matter. But he opined that more general national architectural standards applied, and he testified that according to such standards, it was not proper to "block drive aisles or encourage people to block drive aisles."

Robison explained that an access drive with perpendicular parking was required by national standards to be 24 to 25 feet wide, and he agreed that Hy-Vee's access drive met that width standard. He estimated the width of Sundermann's vehicle was 6 feet, and he explained that when she was parked along the curb of the eastbound drive aisle, vehicles parked in the perpendicular stalls, where Swanson was, had only 19 feet to maneuver, instead of the standard 25 feet. He admitted it was impossible to eliminate all dangers that exist in a mixed-use facility such as a convenience store, where cars and pedestrians are interacting. But he testified the design goal was to eliminate as much vehicular and pedestrian interaction as possible.

Robison's report stated it was the general practice in the industry to separate functions like loading, unloading, and delivery from drive aisles because adding functions to drive aisles increased hazardous conditions. According to Robison, Hy-Vee placed the air compressor in a location where the "most obvious" means of using it was to park in the drive aisle, which created a dangerous condition due to traffic and pedestrians already using the area and which was "made more dangerous with perpendicular parking across from where tire filling was taking place." His report stated that "in the design of gas station facilities . . . tire filling stations should be located in designated parking areas or in the parking lot away from parking and gas pump islands."

Robison examined Hy-Vee's site plan and opined that Hy-Vee should have created a dedicated parking area for patrons using the air compressor. In his opinion, such an area could have been created in the grassy area just north of the convenience store building.

(b) Hy-Vee's Experts

Hy-Vee's expert, Jason Stigge, is a mechanical engineer and consultant. Stigge had never designed a convenience store or gas station, but in preparing his report and forming his opinions, he worked with a forensic architect licensed in Nebraska. Stigge agreed with Robison that there are no local or national policies, codes, or standards that directly address the location or positioning of a tire inflation station at a convenience store. He disagreed that several national standards cited by Robison were applicable to the site design of the subject property. Instead, he testified that the subject property was designed and constructed in compliance with all relevant codes and safety standards and that Hy-Vee's design, including the location of the air compressor, was safe. His report also noted that the location of Hy-Vee's air compressor was similar to that found in a survey of other local gas stations and convenience stores, which showed air compressors were typically located on a

driving lane within the parking lot with no physical barriers or signage directing use.

Stigge admitted Hy-Vee could anticipate patrons would use the air compressor as far as the air hose would reach, which could include using it while parked in the drive aisle. But he opined that drive aisles in retail parking lots are commonly used for both vehicular and pedestrian traffic, as well as for loading and unloading goods, and he suggested that physical separation of vehicular and pedestrian traffic in such areas is not feasible, explaining:

> Fueling station and convenience store parking lots consist of mixed use areas where pedestrians and vehicular traffic are mixed extensively, to include the area comprising drive aisles. Persons utilizing the services of a fueling station, such as vehicle fueling, cleaning windows, filling tires, checking fluid levels, or visiting the convenience store, will inherently be exposed to vehicle traffic in the area. The mixture of pedestrians and vehicles is typical in the environment . . . as well as, many other parking lot situations which people use every day. It is incumbent on both the drivers and pedestrians in a mixed-use area to be cautious and aware of the environment and their surroundings, to include the positioning of themselves or their vehicles.

Finally, based on photographs of the accident scene, Stigge estimated that Sundermann's car was parked 2 feet north of the south curb of the eastbound drive aisle, so that only 17 feet at most separated the rear of Swanson's pickup truck and the passenger side of Sundermann's car. Based on this distance and his calculations as to how Swanson's pickup truck traveled after he hit the accelerator instead of the brake, Stigge opined the accident would have happened even if the area had been designed with a designated parking area in the manner proposed by Sundermann's expert.

Jeff Stein, a civil engineer, is Hy-Vee's director of site planning. Stein was responsible for overseeing site development

of new stores, from acquisition of the property to "ribbon-cutting." He testified that generally, if the local city approves the submitted site plan as compliant with its codes and ordinances, Hy-Vee considers the site plan to be safe.

Stein testified the Hy-Vee drive aisles are used by vehicles and pedestrians for many purposes, including for ingress and egress and to get from the fuel pumps to the convenience store. He admitted that Hy-Vee could expect customers to use the air compressor from any place the hose could reach, which would include the drive aisle. Stein testified "we see people park in all kinds of different locations throughout the site" and he did not think it was possible to know for sure where patrons would park. But he did not think it was unreasonable for Sundermann to park where she did to use the air compressor, because there appeared to be plenty of room for others to maneuver around her.

## 5. District Court Order

The district court granted summary judgment in favor of Hy-Vee and Sweetbriar. The court began its analysis by addressing duty, and it concluded that "Hy-Vee owes a legal duty to all patrons, including Sundermann at the gas station premises." The remaining analysis focused on whether Hy-Vee had breached its duty of reasonable care.

The court reasoned a breach of duty occurs only when the resulting injury to a plaintiff is a reasonably foreseeable consequence of the defendant's conduct, and it concluded Swanson's negligence in pressing the accelerator rather than the brake was not reasonably foreseeable to Hy-Vee or Sweetbriar as a matter of law. Specifically, the trial court reasoned:

No reasonable jury could find a breach of duty in this case.

First, the complaint about the Hy-Vee station's site design is that it presents risks inherent in any design involving people on foot and people in cars. The two share the same limited space and have to be careful about

the normal hazards, such as inattentive drivers not seeing pedestrians, pedestrians not seeing cars, vehicles passing one another in already narrow lanes, etc. However, this accident involved a driver who saw the plaintiff's car and was responding with safe and appropriate action, but then his foot slipped onto the gas and his truck roared backwards before he could realize what had happened.

The district court reasoned that "a slipped foot and uncontrolled acceleration from a driver operating a truck parked in a convenience store parking spot" was not reasonably foreseeable.

Alternatively, the district court also concluded there was no genuine issue of material fact as to causation, reasoning that "Swanson's admitted negligence in operating his truck in reverse was an unforeseeable efficient intervening cause of his truck striking Sundermann, which severed the conduct of the landowner[] Hy-Vee to Sundermann's injuries."

The district court granted the defendants' motion for summary judgment and dismissed the action with prejudice.

## 6. Court of Appeals

### (a) Foreseeability and Breach

Sundermann appealed, and the Court of Appeals reversed, and remanded for further proceedings. In doing so, it did not address the source or scope of the duty owed by Hy-Vee and Sweetbriar. Instead, considering Hy-Vee and Sweetbriar collectively as one entity—Hy-Vee—the Court of Appeals assumed Hy-Vee owed a duty of reasonable care to all patrons. The Court of Appeals focused its analysis on whether, viewing the evidence in the light most favorable to Sundermann and giving her the benefit of all reasonable inferences deducible from the evidence,[2] there was a genuine issue of material fact as to whether Hy-Vee breached its duty.

---

[2] See *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018).

In that regard, relying on *A.W. v. Lancaster Cty. Sch. Dist.*[3] and 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010), the Court of Appeals explained that lack of a foreseeable risk can be a basis for a no-breach determination.[4] It further explained, "'[D]eciding what is reasonably foreseeable involves common sense, common experience, and application of the standards and behavioral norms of the community . . . .'"[5]

Based on these principles and its review of the record, the Court of Appeals found Sundermann had presented evidence from which a finder of fact could conclude it was reasonably foreseeable that a patron would park in the eastbound drive aisle while using Hy-Vee's air compressor. It continued:

> Moreover, finders of fact may—when using their common sense and common experience and applying the standards and behavioral norms of the community—infer from the evidence that automobiles could simultaneously be parked in the [eastbound drive aisle] and in the right-angle parking spots farther to the north. Finders of fact may also reasonably infer from the evidence that an automobile would back out from one of the right-angle parking spots and collide with an automobile parked in the [eastbound drive aisle], perhaps owing, in part, to the need for drivers to sharply turn their vehicles when backing out of those parking spots. We note the district court focused on the very narrow fact pattern present in this case, that being the foreseeability that a person's foot would slip off the brake pedal and inadvertently hit the gas pedal, resulting in the collision. We find that such a fact-specific analysis is not necessary in assessing the question at hand and find that a reasonable person could conclude that it was foreseeable

---

[3] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[4] See *Sundermann, supra* note 1.

[5] *Id.* at 297, 929 N.W.2d at 926, quoting *A.W., supra* note 3.

to Hy-Vee that a vehicle could be operated in such a manner as to fail to observe a person such as Sundermann utilizing the air compressor in the access drive area, resulting in a collision and injury.[6]

As such, the Court of Appeals concluded that there was a genuine issue of material fact as to whether the harm was foreseeable and that Hy-Vee was not entitled to a no-breach determination as a matter of law.

### (b) Proximate Cause

The Court of Appeals also briefly addressed Sundermann's assigned error relating to causation. In doing so, it noted "the district court's order makes only passing reference to causation and did not fully evaluate the issue."[7] The Court of Appeals then concluded that, for substantially the same reasons discussed as to foreseeability of the harm, genuine issues of material fact existed with respect to causation as well. The Court of Appeals thus reversed the summary judgment and remanded the cause for further proceedings.

We granted Hy-Vee and Sweetbriar's petition for further review and requested supplemental briefing on questions related to foreseeability and efficient intervening cause. We also accepted and considered briefs from several amici curiae on these questions.

### II. ASSIGNMENTS OF ERROR

On further review, Hy-Vee and Sweetbriar assign that the Court of Appeals erred in reversing summary judgment because (1) the uncontroverted evidence showed the collision and Sundermann's injuries would have occurred even if Hy-Vee had designed the parking lot according to the alternate design suggested by Sundermann's expert and (2) the uncontroverted evidence supported the trial court's conclusion that it was not

---

[6] *Id.* at 299, 929 N.W.2d at 927-28.

[7] *Id.* at 300, 929 N.W.2d at 928.

reasonably foreseeable that a backing driver would hit the accelerator instead of the brake.

## III. STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[8] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[9]

[2,3] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[10] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[11]

## IV. ANALYSIS

Before addressing the issues in this case, we note that both the district court and the Court of Appeals generally referred to the two defendants in this case, Hy-Vee and Sweetbriar, collectively as Hy-Vee. No party has objected to this characterization, and because it is generally consistent with the pleadings and the parties' briefing, we similarly refer to the defendants collectively as "Hy-Vee."

### 1. Proper Legal Framework

[4] As a general matter, in order to prevail in a negligence action, a plaintiff must establish the defendant's duty to

---

[8] *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

[9] *Id.*

[10] *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018).

[11] *Id.*

protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.[12] The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff.[13]

The district court began its analysis by discussing the concept of legal duty and ultimately concluded that Hy-Vee owed a duty of reasonable care to all of its patrons, including Sundermann. Without specifically identifying the source or scope of such duty, the court proceeded to analyze the evidence as it related to the elements of breach and proximate cause, focusing primarily on the concept of foreseeability. The Court of Appeals addressed the issues in a similar fashion. We presume the approach taken by both courts was necessarily driven by the manner in which the issues were presented by the parties.

Given the assignments of error on further review, the parties' briefing before this court has also focused primarily on the foreseeability inquiry as it relates to both breach and proximate cause in our tort jurisprudence.

Although we have carefully considered the thoughtful and thorough briefing on the issues of foreseeability and efficient intervening cause, we find, as explained below, that the dispositive issue in this premises liability case actually involves neither concept; it turns instead on the concept of duty.

### (a) This Is a Premises Liability Case

The parties occasionally refer to this as a "premises liability case," but neither the evidence nor Hy-Vee's liability was analyzed in that legal framework. Because we agree that Hy-Vee's liability is governed by our premises liability jurisprudence, we first set out, and then apply, the proper legal framework governing such a case.

---

[12] *Id*.

[13] *Id.*

[5] We have cautioned that "[n]ot every negligence action involving an injury suffered on someone's land is properly considered a premises liability case."[14] Generally speaking, our premises liability cases fall into one of three categories: (1) those concerning the failure to protect lawful entrants from a dangerous condition on the land,[15] (2) those concerning the failure to protect lawful entrants from a dangerous activity on the land,[16] and (3) those concerning the failure to protect lawful entrants from the acts of a third person on the land.[17]

This case falls squarely into the first category of premises liability cases, because Sundermann has sued the owner and possessor of property, claiming she was injured by an unreasonably dangerous condition on the property. As such, whether there is a genuine issue of material fact that would preclude the trial court's award of summary judgment in favor of Hy-Vee must be evaluated using the premises liability framework.

---

[14] *Hodson v. Taylor*, 290 Neb. 348, 361, 860 N.W.2d 162, 175 (2015) (claim that lake was unreasonably dangerous because it was too shallow was only premises liability action as against those who owned or occupied lake). See, *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011) (not premises liability where claim does not involve alleged dangerous condition or activity on property); *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004) (not premises liability where claim landowner provided defendant defective ladder). See, also, *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997) (not premises liability where claim involves injury caused by misuse of defective equipment), *disapproved on other grounds, Gayton v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014).

[15] See, e.g., *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016) (plaintiff slipped and fell on piece of watermelon in grocery store); NJI2d Civ. 8.26.

[16] See, e.g., *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999) (plaintiff injured during estate auction); NJI2d Civ. 8.27.

[17] See, e.g., *Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016) (plaintiff injured by intentional act of another patron in tavern parking lot); NJI2d Civ. 8.28.

## (b) Premises Liability Involving
### Conditions on Land

[6] For more than 30 years we have applied the same five-factor rule to premises liability actions involving a condition on the land.[18] A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the existence of reasonable care would have discovered the condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.[19]

Of the five elements recited above, the first three clarify the scope of a land possessor's duty to lawful entrants.[20] We have described this duty as a "specialized standard of care that include[s] three . . . elements" in addition to "the ordinary duty of reasonable care."[21] More precisely, the first three elements identify those conditions on the land regarding which a land possessor owes a duty of reasonable care to protect lawful entrants from physical harm.

---

[18] See, e.g., *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019); *Hodson, supra* note 14; *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012); *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003); *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998); *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995); *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

[19] *Id*.

[20] See, *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014); *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

[21] *Aguallo, supra* note 20, 267 Neb. at 805-06, 678 N.W.2d at 88.

Neither the trial court nor the Court of Appeals expressly applied the premises liability framework to Sundermann's claim. Consequently, neither court determined the scope of Hy-Vee's duty to Sundermann under the first three elements of that framework, and that made consideration of the fourth element—whether Hy-Vee breached its duty of reasonable care—more difficult than it needed to be.

It is undisputed that Hy-Vee is the possessor/owner of the subject property and that Sundermann was a lawful visitor on that property. To determine the scope of Hy-Vee's duty to Sundermann under the circumstances, we consider the evidence in light of the first three elements of our established premises liability framework.

## 2. HY-VEE CREATED CONDITION

[7] The first element of the premises liability test may be met by proving any one of its three subparts, namely, that the defendant created the condition, knew of the condition, or would have discovered the condition by the exercise of reasonable care.[22] Here, the condition on the land which Sundermann alleges caused her injury is the location of the air compressor. Hy-Vee generally admits it designed the parking lot area and was responsible for the location of the air compressor. On this record, there is no dispute that Hy-Vee created and knew of the condition on the land about which Sundermann complains, and the first element of premises liability is satisfied as a matter of law.

## 3. DID CONDITION INVOLVE UNREASONABLE RISK OF HARM?

Our cases considering conditions on the land have generally drawn a distinction between conditions which present ordinary or common risks, and those which present unreasonable

---

[22] *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000).

risks.[23] By limiting tort liability to only those conditions which pose an unreasonable risk of harm, the traditional premises liability test balances two competing policies: requiring businesses to exercise reasonable care to maintain the premises in a safe condition and protecting businesses from becoming the insurers of their patrons' safety.[24]

[8] There is no fixed rule for determining when a risk of harm is unreasonable. But the plain meaning of the term suggests a uniquely or unacceptably high risk of harm—something more than the usual risks commonly encountered.[25] In some premises liability cases, we have approved of defining the phrase "unreasonable risk of harm" to mean "'a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.'"[26] This is an appropriate definition, and we apply it here.

Both parties' experts recognized there is some degree of risk present in all convenience store parking lots, due to the mix of vehicular and pedestrian traffic. Some of the ordinary risks posed by common conditions in parking lots are familiar to drivers and pedestrians alike, including the absence of traffic signs,[27] the presence of moving vehicles,[28] concrete

---

[23] See, *Williamson, supra* note 18 (finding unpainted, tapered curb outside entrance to medical center presents ordinary risk, not unreasonable risk); *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998) (find as general rule that stairs, steps, and unmarked curbs present common risks and are not inherently dangerous).

[24] See *Edwards, supra* note 15.

[25] See *Richardson v. Rockwood Ctr.*, 275 Mich. App. 244, 737 N.W.2d 801 (2007) (common condition is not uniquely dangerous and thus does not give rise to unreasonable risk of harm).

[26] *Danner v. Myott Park, Ltd.*, 209 Neb. 103, 105-06, 306 N.W.2d 580, 582 (1981). See *Schwab v. Allou Corp.*, 177 Neb. 342, 128 N.W.2d 835 (1964). See, also, NJI2d Civ. 8.83.

[27] See *Richardson, supra* note 25 (lack of signs and traffic controls in parking lots is common condition and not uniquely dangerous).

[28] See *id.* (typical hazards posed by cars moving in parking lot are open and do not present unreasonable risk of harm).

wheel stops,[29] and curbs.[30] In the instant case, it is the location of the air compressor in the parking area that is alleged to have created an unreasonable risk of harm.

Hy-Vee offered, in support of summary judgment, expert opinion testimony that both the design of the parking lot and the location of the air compressor complied with all building and safety codes, was similar to that of other area convenience stores, and therefore did not involve an unreasonable risk of harm. Left uncontroverted, this evidence would have entitled Hy-Vee to summary judgment as a matter of law.[31]

But Sundermann offered opinion testimony from her own expert, who opined that the location of the air compressor, although compliant with codes, still presented a dangerous condition because patrons could access and use the air compressor by parking in the eastbound drive aisle, which then blocked traffic in the access drive and exposed patrons to "an unreasonable conflict between vehicles and pedestrians," which he opined was "made more dangerous with perpendicular parking across from where the tire filling was taking place."

We question whether the opinion of Sundermann's expert created a genuine issue of material fact about whether the location of the air compressor created an unreasonable risk of harm—in other words, a risk that was unacceptably high and which a reasonable person would not allow to continue. The risk of being exposed to moving or backing vehicles in a parking lot is a common one, inherent to all parking lots. The experts for both parties recognized that a mixture of cars and pedestrians is typical of a parking area and requires both drivers and pedestrians to be cautious and aware of

---

[29] See *Bellini v. Gypsy Magic Enters., Inc.*, 978 N.Y.S.2d 73, 112 A.D.3d 867 (2013) (wheel stop or concrete parking lot divider which is clearly visible presents no unreasonable risk of harm).

[30] See *Williamson, supra* note 18 (unpainted curb not inherently dangerous and does not present unreasonable risk of harm).

[31] See *Kaiser v. Union Pacific RR. Co.*, 303 Neb. 193, 927 N.W.2d 808 (2019).

their surroundings. Sundermann and Swanson recognized this too, and both testified about the precautions they took to avoid such conflict. This is not to say that a parking lot can never be designed in a way that increases the typical risk of conflict between pedestrians and vehicles to an unacceptably high level. But here, it was undisputed that patrons had options regarding where to park, and where to stand, while using the air compressor. Sundermann's evidence did not suggest that any of those options inhibited sight lines or made it more difficult for drivers and patrons to be cautious and aware of their surroundings, or less able to take ordinary precautions to avoid conflict with one another.

However, we view the evidence in the light most favorable to Sundermann and afford her all reasonable inferences from that evidence. Assuming without deciding that the evidence, when viewed in that light, created a genuine dispute of material fact regarding whether the location of the air compressor created an unreasonable risk of harm, we move on to consider the next element in the premises liability analysis, which we find is dispositive as a matter of law.

### 4. Hy-Vee Could Not Have Expected Sundermann Either Would Not Realize Danger or Would Fail to Protect Herself From Danger

[9,10] Generally speaking, a land possessor is not liable to a lawful entrant on the land unless the possessor has or should have had superior knowledge of the dangerous condition.[32] Consequently, even where a dangerous condition exists, a premises owner will not be liable unless the premises owner should have expected that a lawful visitor such as the plaintiff either would not discover or realize the danger or would fail to protect himself or herself against the danger.[33]

---

[32] See *Warner, supra* note 20.

[33] *Williamson, supra* note 18.

[11] Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition.[34] The rationale behind this general rule is that the open and obvious nature of the condition gives caution so that the risk of harm is considered slight, since reasonable people will avoid open and obvious risks.[35] Stated differently, "Known or obvious dangers pose less of a risk [of harm] than comparable latent dangers because those exposed can take precautions to protect themselves."[36] Simply stated, an open and obvious risk generally will not present an unreasonable risk of harm.

[12,13] Under the open and obvious doctrine, a possessor of land is not liable to invitees for physical harm caused by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness.[37] A condition on the land is considered open and obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee exercising ordinary perception, intelligence, and judgment.[38]

The dangers of parking in the drive aisle to use the air compressor are obvious—they include the risk of being struck by another vehicle either backing into or driving through the drive aisle. Furthermore, the dangers of kneeling next to a parked car in the drive aisle are obvious, as are the dangers of turning one's back to vehicular traffic.

Here, the evidence was undisputed that Sundermann knew and appreciated the risks of parking in the drive aisle to use

---

[34] *Hodson, supra* note 14.

[35] *Id*.

[36] 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51, comment *k.* at 251 (2012).

[37] *Hodson, supra* note 14, citing Restatement (Second) of Torts § 343A (1965).

[38] See, *Hodson, supra* note 14; *Burns, supra* note 18.

the air compressor and crouching in the drive aisle to inflate her tires. She testified that she was aware it was dangerous and that she took precautions to avoid the risks by watching and listening for approaching traffic. There is no dispute that the risks were open and obvious.

[14] But a determination that a risk or danger is open and obvious does not end the duty analysis in a premises liability case.[39] A court must also determine whether the possessor should have anticipated that lawful entrants would fail to protect themselves despite the open and obvious risk.[40]

We have given examples of some circumstances that may provide a land possessor with reason to expect invitees will fail to protect themselves from an open and obvious danger on the land, such as:

"'[w]here the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risks.'"[41]

Here, there was no evidence that Sundermann was distracted or forgot about the risk. Instead, she testified she was aware of the danger and was watching and listening for traffic the entire time she was using the air compressor. In order for the distraction exception to apply, we have said the land possessor must have reason to expect the attention of invitees will be distracted, and there must also be evidence the plaintiff

---

[39] See, *Hodson, supra* note 14; *Connelly, supra* note 18.

[40] See *id.*

[41] *Hodson, supra* note 14, 290 Neb. at 368, 860 N.W.2d at 179. Accord *Connelly, supra* note 18.

actually became distracted.[42] Because there was no evidence that Sundermann failed to protect herself from an obvious danger because she was distracted, the distraction rationale has no application here.

Nor does the evidence support a reasonable inference that Hy-Vee should have expected that patrons choosing to park in the drive aisle would thereafter fail to protect themselves from the obvious danger of vehicular traffic. It is true that Hy-Vee knew its patrons were parking in the drive aisle to use the air compressor, and this suggests that at least some patrons thought the advantages of doing so outweighed the risks. But even when a land possessor is aware lawful visitors are choosing to encounter an obvious risk, it does not necessarily follow that the land possessor has reason to expect the lawful visitors will fail, or be unable, to protect themselves from that risk.

Here, the undisputed evidence showed that although some patrons had been parking in the drive aisle to use the air compressor, Hy-Vee had received no safety complaints about the practice and there had been no accidents as a result of the practice. Sundermann produced no evidence that before her accident, Hy-Vee had any reason to expect patrons who chose to park in the drive aisle would be unable to thereafter protect themselves from the danger posed by approaching vehicles. The sorts of precautions patrons would take to protect against that obvious danger include things like watching and listening for approaching vehicles, getting out of the drive aisle when a vehicle is approaching, or parking in a way that allowed them to inflate their tires while remaining on the curb. These are typical precautions pedestrians already take every day in parking lots, and they are the same precautions Sundermann said she had taken.

Even when the evidence is viewed in the light most favorable to Sundermann, she has failed to produce any evidence from which it can be inferred that Hy-Vee should have expected

---

[42] See *Connelly, supra* note 18.

patrons, who decided to park in the drive aisle to inflate their tires, would fail or be unable to protect themselves against the open and obvious danger posed by moving and backing vehicles in the area.

We find, as a matter of law, that to the extent the location of the air compressor allowed patrons to park in the drive aisle to inflate their tires, it created a risk that was open and obvious. We further find, as a matter of law, that Hy-Vee had no reason to anticipate that lawful entrants like Sundermann, who chose to park in the drive aisle to use the air compressor despite the obvious risk, would fail to protect themselves against the danger. Under such circumstances, the third element of the premises liability test cannot be satisfied and Sundermann's claim against Hy-Vee fails as a matter of law.

[15] Where the record demonstrates that the decision of the trial court is ultimately correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm.[43] Thus, although our rationale differs from that of the trial court, we agree with its conclusion that Hy-Vee is entitled to summary judgment as a matter of law.

## V. CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., not participating.

---

[43] *Hamilton Cty. EMS Assn. v. Hamilton Cty.*, 291 Neb. 495, 866 N.W.2d 523 (2015).