Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/22/2022 08:06 AM CDT

- 754 -

**Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports**
ERMEL v. SMA ENTERS.
Cite as 30 Neb. App. 754

Andrew M. Ermel, appellant, v. SMA
Enterprises, Inc., doing business as
Baxter Ford South, appellee.

___ N.W.2d ___

Filed March 22, 2022.    No. A-21-080.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a
   lower court's grant of summary judgment if the pleadings and admitted
   evidence show that there is no genuine issue as to any material facts or
   as to the ultimate inferences that may be drawn from the facts and that
   the moving party is entitled to judgment as a matter of law. In reviewing
   a summary judgment, an appellate court views the evidence in the light
   most favorable to the party against whom the judgment was granted, and
   gives that party the benefit of all reasonable inferences deducible from
   the evidence.
2. **Negligence.** Generally speaking, premises liability cases fall into one
   of three categories: (1) those concerning the failure to protect lawful
   entrants from a dangerous condition on the land, (2) those concerning
   the failure to protect lawful entrants from a dangerous activity on the
   land, and (3) those concerning the failure to protect lawful entrants from
   the acts of a third person on the land.
3. **Negligence: Liability: Proximate Cause.** A possessor of land is sub-
   ject to liability for injury caused to a lawful visitor by a condition on
   the land if (1) the possessor either created the condition, knew of the
   condition, or by the existence of reasonable care would have discov-
   ered the condition; (2) the possessor should have realized the condition
   involved an unreasonable risk of harm to the lawful visitor; (3) the
   possessor should have expected that a lawful visitor either (a) would
   not discover or realize the danger or (b) would fail to protect himself
   or herself against the danger; (4) the possessor failed to use reason-
   able care to protect the lawful visitor against the danger; and (5) the
   condition was a proximate cause of damage to the plaintiff. Of the five

elements recited above, the first three clarify the scope of a land possessor's duty to lawful entrants, as they identify those conditions which give rise to a duty of reasonable care to protect lawful entrants from physical harm.

4. **Negligence: Words and Phrases.** While there is no fixed rule for determining when a risk of harm is unreasonable, the plain meaning of the term suggests a uniquely or unacceptably high risk of harm.

5. \_\_\_\_: \_\_\_\_. An unreasonable risk of harm means a risk that a reasonable person, under all the circumstances of the case, would not allow to continue.

6. **Negligence.** Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition. The rationale behind this general rule is that the open and obvious nature of the condition gives caution so that the risk of harm is considered slight, since reasonable people will avoid open and obvious risks.

7. \_\_\_\_. A condition on the land is considered open and obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee exercising ordinary perception, intelligence, and judgment.

8. \_\_\_\_. Under the open and obvious doctrine, a possessor of land is not liable to invitees for physical harm caused by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness.

9. \_\_\_\_. A determination that a risk or danger is open and obvious does not end the duty analysis in a premises liability case. A court must also determine whether the possessor should have anticipated that lawful entrants would fail to protect themselves despite the open and obvious risk.

Appeal from the District Court for Sarpy County: Michael A. Smith, Judge. Reversed and remanded for further proceedings.

Matthew A. Lathrop, of Law Office of Matthew A. Lathrop, P.C., L.L.O., and Kathy Pate Knickrehm for appellant.

Michael T. Gibbons and Raymond E. Walden, of Woodke & Gibbons, P.C., L.L.O., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Andrew M. Ermel appeals from an order of the district court for Sarpy County granting summary judgment in favor of appellee, SMA Enterprises, Inc., doing business as Baxter Ford South (Baxter). Ermel was injured after slipping on an accumulation of ice while dropping his vehicle off at Baxter for a service appointment the following day. The court found that under the circumstances of this case, the accumulation of ice was an open and obvious risk that did not create an unreasonable risk of harm to Ermel. Accordingly, the court granted summary judgment in favor of Baxter under the doctrine of premises liability, recently reiterated in *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020). For the reasons that follow, we reverse, and remand for further proceedings.

## BACKGROUND

At approximately 11:45 p.m., on February 24, 2017, Ermel and his girlfriend arrived at Baxter in separate vehicles, because Ermel intended to leave his vehicle for a service appointment the following morning. Baxter had installed a "key drop box" near its service bay doors for customers to use when leaving vehicles after hours. Ermel parked to the north of the service garage, whereas his girlfriend parked immediately in front of the service bay doors, under a large sign which indicated "Service."

According to a weather report from the day in question, the temperature dropped below freezing around 7 a.m. and remained below freezing the rest of the day. In addition to some light rain in the morning, there were periods of snow and light snow ending between 4:15 and 4:35 p.m. In a later deposition, Ermel testified that "[i]t was very cold [and] was precipitating in different forms, snow, sleet, rain, what have

you." Ermel further testified that the roads were wet as he drove to the dealership and that he was aware the conditions were favorable for the formation of ice. He testified that upon arriving at Baxter, the parking lot appeared "wet and slick," but that when he got out of the vehicle, "[i]t wasn't as slick as I had anticipated" and "I had no issues with traction." Ermel's girlfriend also testified that she had no problems walking, but that she knew it was slick and thus "probably walked more carefully."

Ermel testified that he walked from his vehicle, around the back of his girlfriend's vehicle, and to the west side of the building because he believed that is where he would find the key drop box. According to Ermel, such was the location of the key drop box when he had visited the property a number of years prior. However, the record shows that the key drop box was actually located on the north side of the building, in between the two service bay doors, near where Ermel's girlfriend had parked her vehicle.

Nevertheless, Ermel walked around to the west side of the building and slipped on a patch of "downspout ice," sustaining injury to his right elbow. Ermel testified that he was not aware of the downspouts or the accumulation of ice prior to the fall. It was only after the fall that he then noticed the downspouts and ice accumulation, which he described as being "much thicker" and more slippery than the other surfaces he encountered that night. In contrast to the good traction Ermel experienced elsewhere in the parking lot, "[t]here was no traction" on the accumulation of ice under the downspout.

Ermel filed a complaint in the district court seeking compensation for injuries caused by the fall. Ermel first alleged that Baxter owed him a duty of reasonable care under Nebraska's premises liability doctrine. Ermel alleged that there were parking stalls and "a walkway" located on the west side of the building and that there was a pair of rain downspouts located on the northwest corner of the building, which "face west

and release runoff across the walkway." In its answer, Baxter admitted there were parking stalls on both the west and north sides of the service garage. Baxter further admitted there was "space between the parking stalls on the west side of the service garage and the west wall of the service garage" but denied that it was a "'walkway.'"

Baxter admitted there was "a pair of downspouts located on the west side of the service garage closest to its north end" that "release runoff in a westerly direction across the space," which Ermel referred to as a "walkway." Ermel further alleged in his complaint that Baxter breached its duty of reasonable care, to wit: Ermel slipped and fell on ice which had "formed because of runoff from the roof which is directed to this location by the downspouts." Finally, Ermel alleged that Baxter had proximately caused the fall and the injuries sustained thereby. The following images were admitted into evidence to illustrate the location at issue:

Image No. 1



Image No. 2



Image No. 3



Image No. 1 shows the actual location of the key drop box between the service bay doors. Image No. 2 shows Ermel's view of the downspout location as he walked from where he parked his vehicle toward the west side of the building. Also visible in image No. 2 are the parking spaces on the west side of the building and the "walkway" Ermel described. Image No. 3 shows the downspouts located on the northwest corner of the building.

In its answer, Baxter raised a number of affirmative defenses, alleging first that Ermel's recovery should be barred or reduced on account of his own negligence. Baxter alleged that Ermel negligently failed to avoid the "open and obvious" patch of ice. Baxter further alleged that Ermel assumed the risk of injury, that Ermel's injuries were caused by the negligence of others, and that Baxter is entitled to a setoff for medical payments made on Ermel's behalf.

In September 2020, Baxter moved for summary judgment on the basis of the pleadings, photographs taken of the scene, and excerpts from depositions taken of Ermel, his girlfriend, and Tom Kroll, who was a "lender relations manager" employed by Baxter.

Aside from the following, the facts of this case were largely undisputed at the time the case was submitted on the motion for summary judgment. First, Baxter alleged that Ermel consumed "a beer and marijuana" at home prior to driving to Baxter. Indeed, Ermel testified that prior to taking his vehicle to Baxter, he consumed one beer and "some marijuana." Ermel objected to this allegation, arguing Baxter failed to offer competent evidence and asserting "it is a disputed fact whether one beer and a small amount of marijuana would have any effect on [Ermel] at the time of the fall." Second, where Baxter alleged that Ermel's girlfriend left her vehicle running with the headlights on, Ermel testified that the vehicle and headlights were off. Moreover, Baxter alleged that the parking lot was installed with "'big parking lot bright lights'" that had been upgraded within the 2 years prior to the accident. However,

Ermel testified that the "lighting conditions were very dim" in the parking area.

With regard to ice and snow removal, Kroll testified that he was not aware of any written policy or procedure related to ice and snow removal at Baxter. However, Kroll was aware that Baxter had an unwritten contract with a lawn care company to provide ice and snow removal on an as-needed basis. Additionally, Kroll testified that the service manager and general manager are "collective[ly]" responsible for addressing ice and snow as it accumulates, noting that they use salt spreaders and a "multitude of guys" who address the sidewalks "as best they can."

In January 2021, the court entered an order granting Baxter's motion for summary judgment. In reciting the facts above, the court noted that Ermel "mistakenly walked away from the key drop box and around the corner of the building . . . . As he turned the corner of the building, [Ermel] slipped and fell on ice that had accumulated underneath a downspout at that location." While the order will be discussed in more detail below, the court ultimately concluded that "under the facts of this case, the presence of ice was an open and obvious risk, and did not create an unreasonable risk of harm." The court further concluded:

> In addition, the facts do not support a finding that [Baxter] should have anticipated a user of the lock box would fail to protect themselves from the acknowledged danger of ice, or that a late-arriving customer would walk around the building and away from the drop box location.

Ermel now appeals.

## ASSIGNMENT OF ERROR

Ermel assigns that the district court erred in granting Baxter's motion for summary judgment.

## STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show

that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

[2] Generally speaking, premises liability cases fall into one of three categories: (1) those concerning the failure to protect lawful entrants from a dangerous condition on the land, (2) those concerning the failure to protect lawful entrants from a dangerous activity on the land, and (3) those concerning the failure to protect lawful entrants from the acts of a third person on the land. *Id*. The present case, like *Sundermann v. Hy-Vee, supra*, falls squarely in the first category, as Ermel argues he was injured by an unreasonably dangerous condition on the property, to wit: the accumulation of ice under the downspouts.

[3] A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the existence of reasonable care would have discovered the condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Id*. Of the five elements recited above, the first three clarify the scope of a land possessor's duty to lawful entrants, as they identify those conditions which give rise to a duty of reasonable care to protect lawful entrants from physical harm. See *id.*

In granting Baxter's motion for summary judgment, the court concluded as a matter of law that Baxter had no duty to protect Ermel from what it characterized as the "open and obvious risk of ice." The parties agree that the central issue in this case is the court's analysis of the second and third elements of the premises liability doctrine. As to the first element, Baxter conceded that the evidence was sufficient to find in favor of Ermel for purposes of summary judgment. As to the fourth and fifth elements, the court found it unnecessary to address them, having concluded that the second and third elements were dispositive.

[4,5] While there is no fixed rule for determining when a risk of harm is unreasonable, the plain meaning of the term suggests a uniquely or unacceptably high risk of harm. *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020). The Nebraska Supreme Court has at times defined the phrase "unreasonable risk of harm" to mean "'"a risk that a reasonable person, under all the circumstances of the case, would not allow to continue."'" *Id.* at 768, 947 N.W.2d at 506. The court observed that "the evidence is that [Ermel] slipped on ice that had formed underneath a downspout." The court found that the "condition at issue in this case is not the downspout, but the formation of ice" and "[m]erely applying [the *Sundermann*] definition, there is an issue of material fact as to whether the formation of ice *in this location* is an unreasonable risk of harm." (Emphasis supplied.) We agree.

Despite apparently acknowledging a genuine dispute of fact under the second element, the court concluded its analysis of the second element by noting that "the analysis if [sic] the second element is also influenced by the third element." With regard to the third element, the court correctly observed that "a possessor of land is not liable to invitees for physical harm caused by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness." Characterizing the dangerous condition in this case

as the "risk of ice" in general, the court ultimately concluded that such was an open and obvious risk for which Baxter was under no duty to correct.

The court emphasized that the "formation and presence of ice was known," as Ermel admitted that "the risk of ice was a risk he perceived as he left his car." The court observed that Ermel described the parking lot as wet and icy, and "he expected to find slippery conditions when he left his car." The court further noted that "the facts do not support a finding that [Baxter] should have anticipated a user of the lock box would fail to protect themselves from the acknowledged danger of ice, or that a late-arriving customer would walk around the building and away from the drop box location."

We agree that the risk of ice in general, on an indisputably wintery day, was an open and obvious risk to Ermel. However, we disagree that the dangerous condition in this case can be properly characterized as the risk of ice in general. Rather, the record reflects that Ermel slipped and fell on the specific accumulation of ice under the downspouts. Ermel described the accumulation of ice in that location as thicker and more slippery than the surfaces he encountered elsewhere in the parking lot. Viewing the evidence in Ermel's favor, we find there is a reasonable inference that the accumulation of ice under the downspouts created a risk of harm which was different in character from the risk of ice in general. Accordingly, we conclude that there is a material question of fact as to whether the specific accumulation of ice under the downspouts created an unreasonable risk of harm under the second element of the premises liability doctrine.

[6-8] Furthermore, there is a material question of fact as to whether the risk presented by the accumulation of ice under the downspouts was open and obvious to Ermel. Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition. *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020). The rationale behind this general rule is that the

open and obvious nature of the condition gives caution so that the risk of harm is considered slight, since reasonable people will avoid open and obvious risks. *Id.* A condition on the land is considered open and obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee exercising ordinary perception, intelligence, and judgment. *Id.* Under the open and obvious doctrine, a possessor of land is not liable to invitees for physical harm caused by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness. *Id.*

Ermel testified that he did not see the downspouts or the accumulation of ice until after he fell. Indeed, image No. 2 above suggests that the downspouts would not have been visible to Ermel until after he rounded the corner of the building. This is especially true given the time of day that Ermel fell and his testimony that the area was dimly lit. Accordingly, viewing the evidence in Ermel's favor, there is a material question of fact as to whether the accumulation of ice under the downspouts was an open and obvious risk under the third element of the premises liability doctrine.

[9] Moreover, even if the risk of harm created by the accumulation of ice under the downspouts was open and obvious, there would still be a material question of fact as to whether Baxter should have nevertheless anticipated the harm caused thereby. A determination that a risk or danger is open and obvious does not end the duty analysis in a premises liability case. *Sundermann v. Hy-Vee, supra*. A court must also determine whether the possessor should have anticipated that lawful entrants would fail to protect themselves despite the open and obvious risk. *Id.* For example, where the possessor has reason to expect the invitee's attention may be distracted, or where the possessor has reason to expect the invitee will proceed to encounter the known or obvious danger because the advantages of doing so would outweigh the apparent risks. See *id.*

The court emphasized that Baxter should not be expected to anticipate a customer unnecessarily walking around the building past the key drop box as Ermel did in this case. However, the proper question is not what Ermel did in this case, but, rather, what Baxter should have anticipated in any case. Ermel points out that there were parking stalls located on the west side of the building, such that customers could have parked on the west side and encountered the ice under the downspouts as they walked north to the key drop box. Accordingly, even if the risk of ice accumulating under the downspouts was open and obvious, a question which we do not need to decide, there remains a material question of fact as to whether Baxter should have nevertheless anticipated a customer's encountering and slipping on the ice accumulation under the downspouts.

Altogether, the record in this case reveals several material questions of fact as to both the second and third elements of the premises liability doctrine, such that summary judgment was improper. Under the second element, there is a material question of fact as to whether the specific accumulation of ice under the downspouts created an unreasonable risk of harm. Under the third element, there is a material question of fact as to whether the risk of harm created by the accumulation of ice under the downspouts was open and obvious to Ermel. Moreover, even if such was an open and obvious risk, there is a material question of fact as to whether Baxter should have nevertheless anticipated the harm and taken some action to protect customers from it.

## CONCLUSION

For the foregoing reasons, we reverse the order of the district court granting Baxter's motion for summary judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.