IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

GONZALES V. WAL-MART STORES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DIANA GONZALES, APPELLANT,

V.

WAL-MART STORES, INC., APPELLEE.

Filed November 15, 2022.    No. A-22-142.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

Jon Rehm, of Rehm, Bennett, Moore & Rehm, P.C., L.L.O., for appellant.

Dwyer Arce, of Kutak Rock, L.L.P., and Philip M. Kelly, of Douglas Kelly Law Firm, for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

MOORE, Judge.

### INTRODUCTION

Diana Gonzales filed an action against Wal-Mart Stores, Inc. (Wal-Mart), in the district court for Dawson County, as a result of her slipping on liquid and falling inside of a Wal-Mart store in Lexington, Nebraska. The district court sustained Wal-Mart's motion for summary judgment, and Gonzales appeals. Upon our review of the record, we conclude that there is no genuine issue of material fact as to whether Wal-Mart had actual or constructive knowledge of the wet floor on the premises. As such, we affirm.

### STATEMENT OF FACTS

On July 9, 2016, at approximately 11:30 p.m., Gonzales slipped and fell on the floor of Wal-Mart near the checkout area. After Gonzales' fall, a streak of yellow liquid was located

- 1 -

nearby. Both Gonzales and Wal-Mart agree that the liquid was likely some variety of spilled Gatorade.

Gonzales subsequently filed a complaint against Wal-Mart, alleging that she sustained personal injuries as a result of the fall. She asserted that Wal-Mart's negligence was the cause of her injuries, in that Wal-Mart failed to both warn of a hazardous condition and maintain a safe premises. Gonzales sought a judgment against Wal-Mart for medical expenses, general damages, and costs.

Wal-Mart moved for summary judgment. At the hearing on the summary judgment motion, Wal-Mart argued that there was no evidence to establish that Wal-Mart either created the condition of the wet floor or knew, or should have known, of that condition prior to Gonzales' fall. The evidence Wal-Mart submitted in support of its motion included video surveillance footage of Gonzales' fall; Gonzales' deposition testimony; the deposition testimony of Gonzales' daughter, Diana Mercado; and affidavits from two employees of Wal-Mart's Lexington store. In opposition to the motion for summary judgment, Gonzales offered a Wal-Mart incident report, which had been filled out by Mercado immediately after Gonzales' fall.

In her deposition, Gonzales testified that on the day of the fall, she went to Wal-Mart with Mercado. She estimated she had only been in the store for 3 or 4 minutes before she proceeded to the front of the store and fell. During her fall, one of Gonzales' sandals was broken and she landed on the right side of her body. Gonzales felt instant pain on her right side, which has persisted intermittently since her fall.

Gonzales did not recall seeing anything on the floor of the store prior to her fall. Gonzales was unable to say what she slipped on, how much liquid was on the ground, or how the liquid came to be on the ground. She stated that "[t]he only thing I know is that I slipped on something and I fell." When asked if she had knowledge that Wal-Mart was aware of the liquid on the floor prior to her fall, Gonzales responded, "I think they didn't [know]."

Mercado helped Gonzales up and together they walked to a bench inside the store. Once on the bench, a cashier with whom Gonzales was familiar, approached Gonzales to check on her condition. Gonzales denied the cashier's offer to call an ambulance.

In Mercado's deposition, she testified that she did not recall seeing anything on the floor prior to Gonzales' fall. Only after Gonzales' fall did Mercado see the liquid, which was in a "squiggly line," approximately 2 feet long. Mercado did not see cart marks or footprints through the liquid. Mercado had no knowledge of how the liquid came to be on the ground or how long it had been there prior to Gonzales' fall.

Mercado further testified that the cashier saw Gonzales fall and instructed Gonzales and Mercado to wait on the bench while the cashier went to find the store's manager. Mercado met with the store manager and reported both the liquid on the floor and Gonzales' fall to him. Mercado also filled out the Wal-Mart incident report form on behalf of Gonzales. The incident report form reflects that Gonzales slipped on liquid while walking in the checkout section of the store and fell. Only after the fall did Gonzales look at the floor and notice "bright yellow liquid leaving a trail along the section."

The surveillance video depicting Gonzales' fall captures the checkout area, which includes a large aisle dividing the shelves of merchandise from the checkout registers. At the front of the registers are short drink coolers. The Wal-Mart cashiers stand at the center of the registers,

approximately 30 feet from customers walking down the aisle of the checkout area. The video also demonstrates in the hour prior to the fall, dozens of customers walked through the aisle of the checkout area. No one appeared to notice any liquid on the floor and no one else slipped on the floor.

After Gonzales' fall in the center of the checkout area aisle, the surveillance video depicts Mercado helping Gonzales rise and the two women examining the spot on the floor where Gonzales fell. Ten minutes after Gonzales' fall, Wal-Mart employees can be seen cleaning the area.

Two Wal-Mart employees from the Lexington store provided an affidavit regarding the circumstances of Gonzales' fall. Richard Larson, the shift manager, spoke with Gonzales on the store bench shortly after her fall. In his affidavit, Larson stated that Wal-Mart employees are not permitted to consume beverages on the sales floor. Larson had seen instances where liquid had been spilled on the floor of the store by customers who open and drink beverages prior to purchasing them. Based on the information provided by Gonzales, he assumed that the liquid likely came from a customer who opened a bottle of Gatorade to drink some before proceeding to the checkout registers. Larson did not see any cart marks or a trail of footprints away from the location of the spill. Larson also stated that the employee who cleaned the floor following Gonzales' fall did not complete a statement and died prior to Wal-Mart's motion for summary judgment.

Doug Ferreyra, the manager of the Lexington Wal-Mart store, provided further information regarding the training of Wal-Mart employees. He indicated in his affidavit that all employees are trained to look for any moisture on the floor and to guard or mark any spills that are awaiting cleanup as soon as the employee becomes aware of the condition. Employees also routinely conduct "safety sweeps" to assess any dangerous conditions, including spills. Ferreyra stated that no customers reported any moisture on the floor near the checkout area on July 9, 2016, prior to Gonzales' fall.

On February 7, 2022, the district court entered an order granting summary judgment in favor of Wal-Mart. The court determined that there was no evidence that Wal-Mart created the condition of the wet floor or that its employees knew or should have known of the condition. Further, the court determined that the inferences presented by Gonzales, that the cashier could have seen the liquid had she looked and that the yellow color of the liquid put Wal-Mart employees on notice, were based upon guess or speculation and did not create a material issue of fact.

Gonzales appeals.

## ASSIGNMENTS OF ERROR

Gonzales assigns, consolidated and restated, that the district court erred in granting Wal-Mart's motion for summary judgment after concluding that there was no issue of material fact as to whether Wal-Mart had actual or constructive knowledge of the wet floor on the premises.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020). In reviewing a

summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

ANALYSIS

In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor. *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016).

Gonzales asserts that the district court erred in finding as a matter of law that Wal-Mart did not have actual or constructive knowledge of the condition of the floor prior to her slip and fall. Gonzales asserts that a genuine issue of material fact exists as to whether Wal-Mart employees knew or should have known that there was "moisture on [the store's] floor in a highly trafficked area." Brief for appellant at 1.

While Gonzales assigns that Wal-Mart had actual knowledge of the liquid on the floor of the store, she does not argue this issue in her brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Wichman v. Hy-Vee*, 30 Neb. App. 415, 969 N.W.2d 688 (2021). Because Gonzales has not done so, we do not address this issue and turn next to whether Wal-Mart had constructive knowledge.

Constructive knowledge is generally defined as knowledge that one using reasonable care or diligence should have. *Edwards v. Hy-Vee, supra*. In order for a defendant to have constructive notice of a condition, the condition must be visible and apparent and it must exist for a sufficient length of time prior to an accident to permit a defendant or the defendant's employees to discover and remedy it. *Id*. In the absence of evidence to support an inference of the possessor's actual or constructive knowledge of the hazardous condition, the Nebraska Supreme Court has refused to allow the jury to speculate as to the possessor's negligence. *Id*. Inferences based upon guess or speculation do not create material issues of fact for purposes of a summary judgment. *Id*.

There is no evidence to support an inference that Wal-Mart had constructive knowledge of the liquid on the floor. Gonzales specifically testified that she did not know how long the liquid had been on the floor prior to her fall and the affidavits of the Wal-Mart employees indicated that no employee or other customer had reported any liquid being on the floor. There were no footprints or cart marks going through the liquid, which suggests that the liquid was not on the floor for very long prior to Gonzales' fall. Evidence offered by Wal-Mart indicates that employees are not allowed to consume beverages on the sales floor and that the liquid likely came from a customer who opened a bottle of Gatorade before proceeding to the checkout registers.

Gonzales relies upon the case of *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998) for her argument that the conflicting inferences in this case should have prevented entry of summary judgment. We find the cases to be distinguishable. In *Schade*, the Supreme Court of Nebraska affirmed this court's reversal of a grant of summary judgment, concluding that the slip-and-fall case presented conflicting inferences regarding the defendant's constructive knowledge of water on the floor. Based on the testimony of the plaintiff, a maintenance worker, and witnesses of the fall, the Court concluded that a fact finder could have inferred either that the water on the ground existed at the same time the maintenance worker was in the area of the fall and he should have discovered and remedied a condition he characterized as easy to spot; or the water accumulated between the time the maintenance worker left the area and the time the plaintiff slipped and fell. Because the record disclosed a genuine issue of material fact as to whether the county had constructive knowledge of water accumulation, summary judgment was inappropriate.

There are two key differences between *Schade* and the case at issue. Firstly, in *Schade*, the maintenance worker testified that he was in the area of the accident 2 to 15 minutes before the accident. Both the plaintiff and witnesses also testified to seeing the maintenance worker in the area shortly before the slip and fall. While Gonzales argues that a Wal-Mart cashier was in the area of her fall, Mercado testified only that the cashier told Gonzales that "she kind of saw . . . when [Gonzales] was falling." Gonzales presented no evidence indicating that the cashier saw or could have seen the liquid from her place at the checkout stand prior to the fall. The surveillance video depicts the cashier standing over 20 feet away from Gonzales prior to her fall. And secondly, the maintenance worker in *Schade* was in the area of the liquid shortly before the plaintiff's fall and testified that the water on the ground would have been easy to spot. Here, there is no evidence that any Wal-Mart employee was near the liquid on the floor shortly before Gonzales' fall or stated that the liquid streak would have been easy to see. Further, Gonzales' contentions that the streak of yellow liquid was easy to see and could have been discovered by the cashier had she looked, are undermined by the fact that both Gonzales and Mercado did not notice the liquid prior to Gonzales slipping and falling.

We also find Gonzales' reliance upon *Ermel v. SMA Enters.*, 30 Neb. App. 754, 973 N.W.2d 364 (2022) to be misplaced. In that case, constructive knowledge by the defendant of the allegedly dangerous condition was not at issue; rather, the question revolved around whether the allegedly dangerous condition created an unreasonable risk of harm and whether the plaintiff should have anticipated the harm.

Inferences based upon guess or speculation do not create material issues of fact for purposes of summary judgment. *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016). There is simply no way to know whether the spill existed for a sufficient length of time prior to Gonzales' fall to have permitted Wal-Mart's employees, even with their training, to discover the condition. Because there is no evidence or reasonable inference that Wal-Mart knew or should have known of the liquid on the floor, Wal-Mart was entitled to judgment as a matter of law.

CONCLUSION

We conclude that the district court did not err in granting Wal-Mart's motion for summary judgment. Its decision is therefore affirmed.

AFFIRMED.

- 5 -